No. 26-3048

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ANGELIINA LYNN LAWSON,

Plaintiff-Appellant,

v.

ANDERSON COUNTY, KANSAS; TINA MILLER;

KELLY JOHNSON; and JOLENE ZIRKLE,

Defendants-Appellees.

On Appeal from the United States District Court for the District of Kansas

Case No. 5:26-cv-04006  Hon. Toby Crouse, United States District Judge

OPENING BRIEF OF PLAINTIFF-APPELLANT

Oral Argument Not Requested

Angeliina Lynn Lawson, Plaintiff-Appellant, Pro Se

1914 5th Avenue, Leavenworth, Kansas 66048

(913) 972-1661 |AngeliinaCourtRecords@gmail.com

TABLE OF CONTENTS

1. Table of Authorities

2. Glossary

3. Statement of Related Cases

4. Jurisdictional Statement

5. Statement of the Issues Presented for Review

6. Statement of the Case

7. Summary of the Argument

8. Argument

   o I. The district court erred by dismissing on Younger after issuing an OSC limited to different grounds.

   o II. The district court misapplied *Sprint* by forcing this narrowed administrative-access/ADA case into Younger's third category.

   o III. The district court erred by disregarding Appellant's narrowing of the case and deciding a different case than the one presented in the OSC response.

   o IV. The district court's alternative failure-to-state-a-claim ruling did not fairly credit the allegations and exhibits already filed.

9. Conclusion

10. Certificate of Compliance

11.Certificate of Service

---

TABLE OF AUTHORITIES

Ankenbrandt v. Richards, 504 U.S. 689 (1992)

Ashcroft v. Iqbal, 556 U.S. 662 (2009)

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)

Brereton v. Bountiful City Corp., 434 F.3d 1213 (10th Cir. 2006)

Brooks v. Mentor Worldwide LLC, 985 F.3d 1272 (10th Cir. 2021)

Covington v. Humphries, No. 24-1158, 2025 WL 1437624 (10th Cir. May 19, 2025) (unpublished)

D.L. v. Unified Sch. Dist. No. 497, 392 F.3d 1223 (10th Cir. 2004)

Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010)

Hall v. Bellmon, 935 F.2d 1106 (10th Cir. 1991)

Nelson v. City of Albuquerque, 921 F.3d 925 (10th Cir. 2019)

New Orleans Public Service, Inc. v. Council of City of New Orleans, 491 U.S. 350 (1989)

Servants of the Paraclete v. Does, 204 F.3d 1005 (10th Cir. 2000)

Smith v. United States, 561 F.3d 1090 (10th Cir. 2009)

Sprint Communications, Inc. v. Jacobs, 571 U.S. 69 (2013)

Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc., 98 F.4th 1307 (10th Cir. 2024)

Younger v. Harris, 401 U.S. 37 (1971)

Constitutional Provisions

U.S. Const. art. III, U.S. Const. amend. I, U.S. Const. amend. V, U.S. Const. amend. XIV

Federal Statutes

28 U.S.C. § 1291, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1915(e)(2)(B)

42 U.S.C. § 1983, 42 U.S.C. § 12131, 42 U.S.C. § 12132, 42 U.S.C. § 12203

# GLOSSARY

ADA      Americans with Disabilities Act

KORA     Kansas Open Records Act

OJA      Office of Judicial Administration

OSC      Order to Show Cause

ROA      Record on Appeal

---

# STATEMENT OF RELATED CASES

This appeal arises from D. Kan. Case No. 5:26-cv-04006-TC-ADM. The district court's March 4, 2026 Order to Show Cause referred to other federal actions previously filed by Appellant. ROA, Vol. I at 39–40. The underlying state domestic-relations matter referenced by the district court is Anderson County Case No. 2020-DM-000131, with a related Kansas Court of Appeals matter identified by the district court as No. 130051. ROA, Vol. I at 51–52. Appellant is unaware of any prior appeal in this Court from the orders challenged in this appeal other than this case.

---

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because the complaint asserted federal claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and the ADA anti-retaliation/interference provision, 42 U.S.C. § 12203. ROA, Vol. I at 7–10, 41–43. This civil appeal presents a live case or controversy arising under federal law within the judicial power of the United States. See *U.S. Const. art. III*.

On March 16, 2026, the district court entered an order dismissing the action. ROA, Vol. I at 51–53. Judgment was entered the same day. ROA, Vol. I at 54.

On March 18, 2026, Appellant timely filed a Rule 59(e) motion to alter or amend the judgment. ROA, Vol. I at 55–61. On March 24, 2026, Appellant filed a protective notice of appeal. ROA, Vol. I at 62. On April 15, 2026, the district court denied the Rule 59(e) motion. ROA, Vol. I at 63–65.

This Court has appellate jurisdiction under 28 U.S.C. § 1291. Under Fed. R. App. P. 4(a)(4), the notice of appeal became effective upon entry of the order disposing of the Rule 59(e) motion. ROA, Vol. I at 62–65.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred by dismissing this action on *Younger* abstention after issuing an Order to Show Cause limited to subject-matter jurisdiction, judicial immunity, res judicata, and failure to state a claim. ROA, Vol. I at 40, 52–53.

2. Whether the district court misapplied *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), by treating this narrowed administrative-access/ADA case as a "civil proceeding[] involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions," even after Appellant expressly withdrew any request that the federal court vacate or alter the December 22, 2025 custody order. ROA, Vol. I at 42–44, 63–64.

3. Whether the district court erred by disregarding Appellant's narrowing of the case in the OSC response and instead deciding the case based on the original complaint's broadest prayer for relief. ROA, Vol. I at 42–44, 63–64.

4. Whether the district court erred in alternatively concluding that the complaint failed to state a claim without fairly crediting the nonconclusory allegations and exhibits already filed regarding disability-related communication barriers, ADA accommodation requests, non-docketing of the December 18, 2025 report, denial of access to that report, and

obstruction of access to court and appellate records. ROA, Vol. I at 7–10, 12–18, 19–28, 35–38, 45–50, 64.

## STATEMENT OF THE CASE

A. Nature of the case

This is a federal civil-rights and ADA access case against Anderson County and court administrative officials. The complaint alleged that a positive December 18, 2025 parenting report was sent directly to chambers, never docketed or served, later confirmed as unfiled, and then withheld from Appellant while ADA accommodation requests for effective communication and access to records were rerouted into Kansas Open Records Act denials. ROA, Vol. I at 8–10, 12–18

The complaint invoked 42 U.S.C. § 1983, 42 U.S.C. § 12132, and 42 U.S.C. § 12203, and named Anderson County, Clerk Tina Miller, District Court Administrator and ADA Coordinator Kelly Johnson, and Kansas Supreme Court ADA Coordinator Jolene Zirkle. ROA, Vol. I at 6–10.

B. Complaint and exhibit filed

The complaint alleged that county and judicial-branch officials acted under color of law by suppressing material evidence, altering the record on appeal, refusing to

transmit the record during federal removal proceedings, and retaliating against Appellant's exercise of ADA rights. ROA, Vol. I at 8–10.

Exhibit A attached to the complaint showed, among other things; Kelly Johnson's January 15, 2026 denial stating that the 4 Families report "was emailed directly to Judge Godderz's office" and was not subject to KORA because it was "received and kept by the judge." ROA, Vol. I at 12; Appellant's December 18, 2025 ADA request describing disability-related communication barriers and requesting timely electronic delivery of documents, written confirmation of filing status, access to missing file-stamped copies, and an end to withholding or relabeling filings. ROA, Vol. I at 16–18; Appellant's December 19, 2025 written clarification that her request was not a KORA request, but an ADA Title II reasonable accommodation request for effective communication, and that reclassifying it as KORA was legally improper and interfered with ADA rights. ROA, Vol. I at 14–15.

These were not generalized accusations. They were specific factual allegations supported by written communications.

C. Supplemental filing strengthened the record

On January 16, 2026, Appellant filed a supplemental notice documenting ongoing denials and attaching further written exhibits. ROA, Vol. I at 19–21. That filing

alleged that: the December 18, 2025 report was sent directly to chambers and never docketed or served; the December 22, 2025 order suspending parenting time omitted and concealed the positive report; Kelly Johnson denied access on January 15, 2026, stating the judge "kept" the report from the public record; Tina Miller denied access on January 16, 2026, and affirmed the report was never filed; and OJA did not intervene, and instead referred Appellant back to the same district-court actors responsible for the denial of access. ROA, Vol. I at 19–21.

The exhibits attached to that supplemental notice included Tina Miller's written statement that the 4 Families/Layne Project document "has not been filed" in the domestic case and that there were no documents filed on December 18, 2025. ROA, Vol. I at 22–23. They also included OJA's response refusing oversight and referring Appellant back to the district court. ROA, Vol. I at 26–28.

D. The case remained in pre-service screening posture

The district court granted IFP status on January 27, 2026, but ordered the U.S. Marshals Service to withhold service until further order. ROA, Vol. I at 29–30. Appellant then moved to expedite service and set a scheduling conference, explaining that the record suppression and ADA denials were continuing to cause irreparable harm. ROA, Vol. I at 31–33. That motion was denied because the court

intended to screen the complaint under 28 U.S.C. § 1915(e)(2)(B) before service. ROA, Vol. I at 34.

Appellant responded to that denial, expressly acknowledging the screening requirement but preserving that prolonged pre-service delay could itself operate as a denial of meaningful access for an indigent disabled litigant. Appellant also expressly stated in that filing: "Plaintiff is a qualified individual with a disability." ROA, Vol. I at 35–38.

Thus, before dismissal, the court had before it the complaint, Exhibit A, the supplemental notice with Exhibits B-D, the motion to expedite, and the response preserving access and disability issues during screening.

E. The OSC identified four grounds only

On March 4, 2026, the district court issued an Order to Show Cause directing Appellant to show cause why the action should not be dismissed for:

1.  lack of subject-matter jurisdiction;

2.  judicial immunity;

3.  res judicata; or

4.  failure to state a claim. ROA, Vol. I at 40.

The OSC did not identify *Younger* abstention as a ground requiring response.

F. Appellant's OSC response narrowed the case

Appellant timely responded on March 11, 2026. ROA, Vol. I at 41–50.

That response expressly clarified that the suit was not a request for federal appellate review of the Anderson County custody case; Appellant withdrew any prior request that the federal court vacate, declare void, or otherwise directly alter the December 22, 2025 custody order or any other state custody determination; and the case instead sought federal remedies for independent administrative and ADA-related conduct, including non-docketing, withholding of the December 18, 2025 report, rerouting of ADA requests into KORA denials, and denial of access to court records. ROA, Vol. I at 42–44.

The OSC response further alleged that Appellant has a communication disability requiring accommodations and auxiliary aids to participate effectively in court proceedings; Appellant submitted multiple written ADA Title II requests; Johnson and Zirkle treated those requests as KORA requests and denied effective communication; and those actions plausibly supported due-process, access-to-courts, Title II, and § 12203 claims. ROA, Vol. I at 47–50.

G. The district court nevertheless dismissed on a different theory

On March 16, 2026, the district court dismissed the suit because "jurisdiction is precluded by the *Younger* abstention doctrine." ROA, Vol. I at 52–53. The court characterized the dispute as simple: Appellant requested a document related to the merits of the domestic case, the clerk refused because it was not public, and Appellant then sued in federal court. ROA, Vol. I at 51–52.

The court did not analyze the narrowed position set out in the OSC response. Instead, it treated the case as a challenge to a state domestic-relations dispute and held that all *Younger* elements were present. ROA, Vol. I at 52–53. Judgment followed the same day. ROA, Vol. I at 54.

H. Rule 59(e) preserved the same objections, but the court again reverted to the original complaint

Appellant timely moved under Rule 59(e), arguing that the dismissal rested on *Younger*, a ground not identified in the OSC; the dismissal misapprehended the federal case actually presented in the OSC response; *Sprint* limits *Younger* to exceptional categories; even if some abstention were proper, dismissal of damages claims was erroneous. ROA, Vol. I at 55–61.

On April 15, 2026, the district court denied Rule 59(e). ROA, Vol. I at 63–65.. The court again treated the case as directly challenging a state-court order, relying on

the original complaint's request for declaratory relief declaring the "custody-terminating order" void. ROA, Vol. I at 64. The court also alternatively stated that the complaint failed to state a claim because Appellant had not alleged that she was a qualified individual with a disability or that she engaged in protected opposition to discrimination. ROA, Vol. I at 64.

That alternative ruling overlooked the actual allegations and exhibits already in the record.

## SUMMARY OF THE ARGUMENT

The district court did not dismiss the case presented in Appellant's March 11 OSC response. It ordered Appellant to address only subject-matter jurisdiction, judicial immunity, res judicata, and failure to state a claim, then dismissed instead on *Younger* abstention. That mismatch matters because the case remained in pre-service screening posture, with no adversarial briefing and no notice that abstention was the ground the court would use to terminate the action.

After the OSC, Appellant expressly withdrew any request that the federal court vacate or alter the December 22, 2025 custody order and narrowed the case to independent administrative and ADA-related misconduct by non-judicial

defendants: off-docket receipt of the December 18 report, nondocketing and withholding of that report, denial of access to court records, and rerouting of ADA accommodation requests into KORA denials. But the dismissal order and the Rule 59(e) denial continued to treat the suit as though it still sought federal review of a custody decree.

That was a misapplication of *Sprint*. *Younger* applies only in three exceptional categories, and the Tenth Circuit has reiterated that courts ask first whether the state matter fits one of those categories; only then may they proceed to ordinary *Younger* analysis. This case, as narrowed, targets administrative record-handling and denial of effective communication. It does not challenge contempt machinery, bond requirements, or other state-court enforcement processes uniquely necessary to the judiciary's operation.

*Covington* strengthens that point. There, the Tenth Circuit reversed a *Younger* dismissal arising from an ongoing domestic-relations case because the state domestic proceedings did not fit the *Sprint* categories and because, even if abstention had applied, damages claims should have been stayed rather than dismissed outright. This appeal is at least as strong because Appellant narrowed away direct merits relief before dismissal and preserved the same objections again in Rule 59(e).

Finally, the district court's alternative failure-to-state-a-claim ruling cannot stand. The complaint, Exhibit A, the supplemental filing, the screening-response filing, and the OSC response alleged a communication disability, written ADA accommodation requests, reclassification of those requests as KORA requests, a report sent to chambers but never docketed, written denials confirming the report was not filed, and resulting interference with Appellant's ability to participate in the proceedings and in the appeal record. This was not a bare-accusation case. The judgment should be reversed, vacated, and remanded.

ARGUMENT

Standard of Review

Whether *Younger* abstention applies and whether the complaint plausibly stated a claim are reviewed de novo. The denial of Rule 59(e) relief is reviewed for abuse of discretion, but a district court abuses its discretion when it rests its ruling on legal error or misapprehends the facts, a party's position, or the controlling law. See *Nelson v. City of Albuquerque*, 921 F.3d (10th Cir. 2019); *Servants of the Paraclete v. Does*, 204 F.3d (10th Cir. 2000).

If the dismissal is treated as jurisdictional, it must be without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d (10th Cir. 2006). And if abstention affected damages

claims, the proper course is a stay rather than outright dismissal. *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d (10th Cir. 2004); *Covington v. Humphries*, No. 24-1158, 2025 WL 1437624, at 8-9 (10th Cir. May 19, 2025) (unpublished).

Argument I. The district court erred by dismissing on *Younger* after issuing an OSC limited to different grounds.

The district court's March 4, 2026 OSC required Appellant to show cause only as to subject-matter jurisdiction, judicial immunity, res judicata, and failure to state a claim. ROA, Vol. I at 40. Appellant responded directly to those four issues. ROA, Vol. I at 41–50.

The court then dismissed on a different threshold theory: *Younger* abstention. ROA, Vol. I at 52–53. That procedural mismatch independently warrants reversal. At minimum, it required the district court to address the case Appellant actually briefed and then renewed in Rule 59(e), not a different abstention theory first invoked at the point of dismissal.

It also confirms that the later Rule 59(e) denial rested on the same misapprehension of Appellant's position and the controlling law, which is itself an abuse of

discretion. See *Nelson*, 921 F.3d at 929; *Servants of the Paraclete*, 204 F.3d at 1012.

This was especially significant here because the OSC itself framed the case through concerns about duplication, judicial immunity, res judicata, and plausibility. ROA, Vol. I at 39–40. Appellant addressed those grounds and also narrowed the case in response. ROA, Vol. I at 42–44. The court then dismissed on *Younger* without having identified *Younger* as the ground requiring response. ROA, Vol. I at 52–53.

The error also mattered because the district court entered a final dismissal rather than addressing narrower alternatives. Even if the court believed abstention affected some prospective relief, Tenth Circuit authority recognizes that damages claims ordinarily are stayed, not dismissed outright, and that jurisdictional dismissals are without prejudice. See *D.L.,* 392 F.3d at 1232; *Brereton*, 434 F.3d at 1216-19; *Covington*, 2025 WL 1437624, at 8-9.

Argument II.    The district court misapplied Sprint by forcing this narrowed administrative-access/ADA case into *Younger*'s third category.

*Sprint* makes two things clear.

First, federal courts ordinarily have a "virtually unflagging obligation" to hear cases within federal jurisdiction. *Sprint*, 571 U.S. at 77 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)).

Second, *Younger* applies only in three "exceptional" categories: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings akin to criminal prosecutions; and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions. *Sprint*, 571 U.S. at 72, 78-79; New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367-68 (1989). *Younger* itself arose from an effort to enjoin an ongoing state criminal prosecution, and *Sprint* makes clear that its later extensions remain exceptional rather than general. See *Younger v. Harris*, 401 U.S. 37, 43-45 (1971); *Sprint*, 571 U.S. at 78-82.

The Tenth Circuit has now made the threshold rule explicit: only if the state proceeding falls within one of those enumerated *Sprint* categories may a court proceed to ordinary *Younger* analysis. *Travelers Cas. Ins. Co. of Am. v. A-Quality Auto Sales, Inc.*, 98 F.4th (10th Cir. 2024); *Covington v. Humphries*, No. 24-1158, 2025 WL 1437624 (10th Cir. May 19, 2025) (unpublished).

The district court's March 16 dismissal relied on the existence of an ongoing divorce case and appeal, the importance of domestic-relations interests, and the

19

assumption that Kansas courts would provide an adequate opportunity to raise federal claims. ROA, Vol. I at 52–53. But *Sprint* says those considerations do not do all the work. The threshold question is whether the case fits one of the three categories at all. *Sprint,* 571 U.S. at 78-82. Nor does the domestic-relations context itself create a free-floating abstention rule. Although federal courts do not issue divorce, alimony, or child-custody decrees, that limited domestic-relations principle does not transform every later federal civil-rights or ADA access claim arising around a custody case into a *Sprint* category-three proceeding. See *Ankenbrandt v. Richards*, 504 U.S. 689, 703-04 (1992).

The April 15 Rule 59(e) denial attempted to fit this case into *Sprint*'s third category by saying Appellant "directly challenges" a state-court order because the complaint originally requested declaratory relief declaring the "custody-terminating order" void. ROA, Vol. I at 64. That framing ignores the actual nature of the case as it stood after the OSC response.

The record before dismissal showed allegations that:

1. a December 18, 2025 parenting report was sent to chambers and never docketed or served; ROA, Vol. I at 9, 19–21;

2. Kelly Johnson denied access and said the report was emailed directly to Judge Godderz's office and "kept by the judge." ROA, Vol. I at 12;

3. Tina Miller confirmed the report had not been filed and that there were no filings on December 18, 2025. ROA, Vol. I at 22–23;

4. ADA Title II accommodation requests were expressly rerouted into KORA processing, despite Appellant's written objection that this was legally improper and interfered with ADA rights. ROA, Vol. I at 14–18; and

5. OJA declined to intervene and instead referred Appellant back to the same district-court actors. ROA, Vol. I at 26–28.

Those allegations describe administrative record-handling and ADA-access misconduct by non-judicial defendants. Under *Sprint*, *Travelers*, and *Covington*, those allegations do not place this case within the narrow class of proceedings involving orders uniquely in furtherance of a state court's ability to perform its judicial functions. The district court treated the existence of an ongoing domestic case and an important state interest as sufficient by themselves. After *Sprint*, they are not.

Nor did the requested relief convert the case into a *Sprint* category-three proceeding. After the OSC response, Appellant no longer asked the federal court to void or alter the custody order. She sought relief directed to independent conduct: non-docketing, withholding, denial of access, and ADA interference. Even if the district court believed some equitable relief brushed too near the state proceedings,

*Covington* confirms that the proper course for damages claims would have been a stay, not outright dismissal. The Rule 59(e) order confirms the district court's error because it reverted to the original complaint's broad prayer rather than the narrowed position before the court. But Rule 59(e) exists precisely to correct a judgment that has misapprehended the facts, a party's position, or the controlling law. *See Nelson v. City of Albuquerque*, 921 F.3d (10th Cir. 2019); *Servants of the Paraclete v. Does*, 204 F.3d (10th Cir. 2000).

---

Argument III.     The district court erred by disregarding Appellant's narrowing of the case and deciding a different case than the one presented in the OSC response.

This point is central.

In response to the OSC, Appellant expressly told the court:

1. this action was not a request for federal appellate review of the Anderson County custody matter;

2. Appellant withdrew any prior request that the federal court vacate, declare void, or otherwise directly alter the December 22, 2025 custody order or any other state custody determination; and

3. the case instead targeted independent administrative and ADA-related conduct by county and court staff, including non-docketing, withholding, denial of access to the December 18, 2025 report, and rerouting of ADA accommodation requests into KORA denials. ROA, Vol. I at 42–44.

That narrowing was explicit. It removed the broadest request for relief from the case posture the district court was being asked to evaluate. After that filing, the operative dispute for screening purposes was not whether a federal court should void a custody order. It was whether the complaint, exhibits, supplemental filing, and OSC response plausibly alleged federal claims against non-judicial defendants for administrative record suppression and denial of effective communication.

The district court nevertheless decided the case as though the narrowing had never occurred. The March 16 order reduced the case to a simple dispute over a nonpublic document related to the merits of the domestic matter. ROA, Vol. I at 51–52. The April 15 order then reverted to the original complaint's broad declaratory request to classify the case as "squarely" within *Sprint* category three. ROA, Vol. I at 64.

That was error.

A district court is not free to ignore a litigant's express narrowing of requested relief when that narrowing is filed in direct response to the court's own OSC and is aimed at the jurisdictional problem the court identified. Once Appellant withdrew any request to vacate or alter the custody order, the district court had to evaluate the narrowed federal case actually before it. A court cannot justify abstention by ignoring the relief-limiting clarification that removed the very feature the court later used to classify the case as a direct challenge to a state decree. By refusing to do so, the court misapprehended both Appellant's position and the record.

That mismatch infected both the *Younger* analysis and the denial of Rule 59(e). Reversal and vacatur are warranted on that basis as well.

Argument IV.   The district court's alternative failure-to-state-a-claim ruling did not fairly credit the allegations and exhibits already filed.

The district court alternatively stated that even if *Younger* did not apply, the complaint failed to state a claim because Appellant had not alleged facts sufficient to show, for example, that she is a qualified individual with a disability or that she engaged in protected opposition to discrimination. ROA, Vol. I at 64.

That conclusion did not fairly account for the actual filings before the court or for the very elements the district court said were missing.

A. The record did allege disability communication barriers and ADA requests. Exhibit A included Appellant's December 18, 2025 ADA request stating that the clerk's conduct had created barriers to communication "based on my disability." ROA, Vol. I at 16–18. It requested effective-communication accommodations, including immediate electronic delivery of filed documents, written confirmation of filing status, access to missing filed materials, and an end to withholding or relabeling filings. *Id.*

Exhibit A also included Appellant's December 19, 2025 written clarification that her request was "submitted exclusively as an ADA Title II reasonable accommodation request for effective communication," that it must be processed under the court's ADA obligations, and that continued treatment of the request as KORA could constitute interference with ADA rights under 42 U.S.C. § 12203(b). ROA, Vol. I at 14–17.

The screening-response filing went further and explicitly stated: "Plaintiff is a qualified individual with a disability." ROA, Vol. I at 36. The OSC response likewise alleged that Appellant has a communication disability requiring

accommodations and auxiliary aids to participate effectively in court proceedings. ROA, Vol. I at 47–48.

So even on the district court's own framing, the record alleged both a qualifying communication disability and protected opposition to disability discrimination. At screening, those filings had to be read liberally and together, not in artificially isolated pieces. A pro se pleading should be reasonably read to state a valid claim if it can, and where amendment may cure any deficiency dismissal with prejudice is disfavored. See *Hall v. Bellmon*, 935 F.2d (10th Cir. 1991); *Gee v. Pacheco*, 627 F.3d (10th Cir. 2010).

B. The record did allege specific nonconclusory misconduct.

The complaint alleged the report was submitted to chambers on December 18, 2025 and never docketed or served; the December 22, 2025 order omitted and contradicted that report; Tina Miller later confirmed the report was never filed or served; and access to the report was denied even when requested as an ADA accommodation. ROA, Vol. I at 8–10.

Exhibit A and the supplemental exhibits added written proof; Kelly Johnson's January 15 denial saying the report was emailed directly to the judge's office and kept there, ROA, Vol. I at 12; Tina Miller's January 16 denial stating the report was not filed and no documents were filed on December 18, 2025, ROA, Vol. I at

22–23; and OJA's refusal to address the complaint and referral back to the district court, ROA, Vol. I at 26–28.

These are not merely "defendant violated the law" allegations. *Brooks* does not require dismissal on this record. *Brooks* rejected truly bald accusations untethered to supporting facts. See *Brooks v. Mentor Worldwide LLC*, 985 F.3d (10th Cir. 2021). Here, by contrast, Appellant identified the report, the dates, the named actors, the written denials, the rerouting of ADA requests into KORA, and the resulting interference with access to court and appellate processes. That is factual content, not a formulaic accusation.

Those are dated factual assertions, tied to named actors and written exhibits, showing what was sent, what was withheld, how access was denied, and how those actions allegedly impaired Appellant's participation in her case and appeal. That is enough to cross the line from possible to plausible. *Twombly* and *Iqbal* do not require evidentiary proof at the pleading stage; they require factual content sufficient to permit a reasonable inference of liability. See *Twombly*, 550 U.S. at 555-57; *Iqbal*, 556 U.S. at 678; *Gee*, 627 F.3d at 1184-86.

C. The court also overlooked the access-to-courts and due process theories actually pleaded.

The complaint invoked due process, access to courts, equal protection, First

Amendment retaliation, *Title II.,* and ADA anti-retaliation. ROA, Vol. I at 7. The complaint thus expressly invoked retaliation for protected petitioning and complaint activity under the First Amendment. See *U.S. Const. amend. I.* Those pleaded due-process and access claims arise under the Constitution's guarantee of fair process, as enforced here through § 1983 against state actors. See *U.S. Const. amend. XIV.* The OSC response explained that the non-docketing and withholding of the December 18 report impeded Appellant's ability to understand and respond to proceedings and obstructed her ability to pursue a proper appeal. ROA, Vol. I at 47–50.

The screening-response filing preserved that prolonged pre-service screening could itself operate as a temporary denial of judicial protection for an indigent disabled litigant suffering ongoing harm. ROA, Vol. I at 36–38.

Even if the district court believed the pleading could be sharpened, that would support leave to amend, not a merits dismissal resting on the premise that the record contained nothing but bald accusations.

D. Pre-service screening did not justify ignoring the clarifications already filed. This case was dismissed at § 1915 screening before service and without adversarial briefing. That procedural posture did not erase later-filed clarifications that were already in the district-court record when judgment entered. The complaint, Exhibit

A, the supplemental notice, the screening-response filing, and the OSC response had to be read together when evaluating what the district court had before it.

Read together, those filings described a coherent, plausible federal case a concrete report sent off docket to chambers; written confirmations that it was not filed; written denials of access; rerouting of ADA requests into KORA; repeated assertions of disability-related communication barriers; and allegations that those barriers affected Appellant's ability to access court and appellate processes. ROA, Vol. I at 8–10, 12–18, 19–28, 35–38, 45–50.

The district court's alternative failure to state a claim ruling should be reversed. In deciding a Rule 12(b)(6) type issue, the court's function was not to weigh what evidence might later be produced, but to determine whether the pleaded facts and attached materials stated a legally sufficient claim. See *Smith v. United States*, 561 F.3d (10th Cir. 2009). If the district court believed further clarification was needed, leave to amend, not outright dismissal, was the proper course. See *Fed. R. Civ. P.* 15(a)(2); *Gee*, 627 F.3d at 1195-97.

---

## CONCLUSION

For the foregoing reasons, this Court should:

1. reverse the March 16, 2026 dismissal order;

2. reverse the April 15, 2026 Rule 59(e) order;

3. vacate the judgment; and

4. remand for further proceedings on the narrowed federal case Appellant

   actually presented.

If the Court concludes abstention affected only some prospective relief, it should

still instruct that any damages claims be stayed rather than dismissed and that any

jurisdictional dismissal be without prejudice.

Respectfully submitted,                                             Dated: April 17, 2026

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson, Plaintiff-Appellant, Pro Se

1914 5th Ave., Leavenworth, KS 66048

(913) 972-1661 | AngeliinaCourtRecords@gmail.com

---

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts exempted by Fed. R. App. P. 32(f), this brief contains <u>4,953</u> words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a double spaced typeface using MS Word in 14-point Times New Roman.

Dated: April 17, 2026

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson

---

CERTIFICATE OF SERVICE

I certify that on April 17, 2026, I filed the foregoing Opening Brief with the Clerk of the Court. To the extent any party has entered an appearance through the Court's electronic filing system, service was accomplished through that system. No defendant was served or appeared in the district court before dismissal.

/s/ Angeliina Lynn Lawson
Angeliina Lynn Lawson